DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiffs-Appellants Sarum Management, Inc. et. al. have appealed the judgment of the Summit County Court of Common Pleas which granted Defendant-Appellee The Alex N. Sill Company's motion for judgment on the pleadings and dismissed each of their claims with prejudice. This Court affirms.
 I {¶ 2} On August 16, 2005, Plaintiffs-Appellants Sarum Management, Inc. and MEB Investments, Ltd. (collectively "Sarum") filed a complaint against Defendant-Appellee The Alex N. Sill Co. ("Sill") which alleged a breach of contract, fraud, unauthorized practice of law, and unjust enrichment. On September 16, 2005, Sill answered the complaint and asserted affirmative defenses.
 {¶ 3} On December 28, 2005, Sill filed a motion for judgment on the pleadings. On January 9, 2006, Sarum filed a brief in opposition to Sill's motion for judgment on the pleadings. Sarum also filed a motion to amend the complaint. On March 16, 2006, the trial court granted Sill's motion for judgment on the pleadings and dismissed all of Sarum's claims with prejudice.
 {¶ 4} Sarum has timely appealed, asserting four assignments of error, which have been consolidated for our review.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED BY ENTERING JUDGMENT ON THE PLEADINGS WITH RESPECT TO APPELLANT'S FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT."
 Assignment of Error Number Two
"THE TRIAL COURT ERRED BY ENTERING JUDGMENT ON THE PLEADINGS WITH RESPECT TO APPELLANT'S SECOND CAUSE OF ACTION FOR FRAUD."
 Assignment of Error Number Three
"THE TRIAL COURT ERRED BY ENTERING JUDGMENT ON THE PLEADINGS WITH RESPECT TO APPELLANT'S THIRD CAUSE OF ACTION FOR VIOLATION OF R.C. § 4705.07."
 Assignment of Error Number Four
"THE TRIAL COURT ERRED BY ENTERING JUDGMENT ON THE PLEADINGS WITH RESPECT TO APPELLANT'S FOURTH CAUSE OF ACTION FOR UNJUST ENRICHMENT."
 {¶ 5} In its assignments of error, Sarum has argued that the trial court erred when it dismissed each of its claims on the pleadings. We disagree.
 {¶ 6} "This Court reviews a trial court's decision to grant a motion for judgment on the pleadings under the de novo standard of review." McLeland v. First Energy, 9th Dist. No. 22582,2005-Ohio-4940, at ¶ 6, citing Fontbank, Inc. v. Compuserve,Inc. (2000), 138 App.3d 801, 807. "When construing a defendant's motion for judgment on the pleadings pursuant to Civ.R. 12(C), the trial court must construe as true all material allegations in the complaint, together with all reasonable inferences to be drawn therefrom." Id., citing Peterson v. Teodosio (1973),34 Ohio St.2d 161, 165-66. Further, "[t]he determination of a motion for judgment on the pleadings is restricted solely to the allegations of the pleadings." Id., citing Peterson,34 Ohio St.2d at 166. In order to uphold a judgment on the pleadings, "a reviewing court must find, beyond a doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested." Id., citing Lin v.Gatehouse Constr. Co. (1992), 84 Ohio App.3d 96, 99.
Breach of Contract Claim
 {¶ 7} Sarum has argued that the trial court erred when it dismissed its breach of contract claim. Specifically, Sarum has argued that the contract language at issue is ambiguous, and that as a result, the ambiguity should be construed against the drafter, Sill. Additionally, Sarum has argued that given the contract's ambiguity, extrinsic evidence of Sill's intent in drafting the contract should have been considered by the trial court. We disagree.
 {¶ 8} Sarum has correctly recited the law. "If a contract is clear and unambiguous, its interpretation is also a matter of law, and no issue of fact remains to be determined." Denman v.State Farm Ins. Co., 9th Dist. No. 05CA008744, 2006-Ohio-1308, at ¶ 13. Contract terms are ambiguous "only if they can be reasonably understood in more than one sense." Watkins v.Williams, 9th Dist. No. 22162, 2004-Ohio-7171, at ¶ 24. "If a contract is deemed unambiguous, a court must defer to the express terms of the contract and interpret it according to its plain, ordinary, and common meaning." (Quotations omitted). Haley v.Hunter, 9th Dist. No. 23027, 2006-Ohio-2975, at ¶ 15. Furthermore, courts may resort to extrinsic evidence of the parties' intent "only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." Metcalfe v.Akron, 9th Dist. No. 23068, 2006-Ohio-4470, at ¶ 18, quotingKelly v. Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, 132.
 {¶ 9} After reviewing the contested contractual provision, we find that the language employed is unambiguous; that is, it cannot be "reasonably understood in more than one sense."Watkins at ¶ 24. Our reasoning for this conclusion is as follows.
 {¶ 10} The parties have agreed that the following contractual provision is dispositive in the instant matter:
"I (We) agree to pay for such services and hereby assigns and conveys [SEE FEE SCHEDULE] % of the total proceeds relating to the Claim, including salvage and advances, however recovered and whenever paid by the insurance Company(ies), or as otherwise recovered."
 {¶ 11} First, we begin by focusing on the language that Sarum "hereby assigns and conveys [a percentage] of the total proceeds * * * whenever paid by the insurance Company(ies)" in payment for the services rendered. This language clearly indicates that Sill would be collecting its fee from the total proceeds received from the insurance company. Put another way, the contractual language indicates that whenever the total amount was recovered from the insurance company, Sarum agreed to assign and convey apercentage of it to Sill. Quite simply, the only construction this Court can give the above provision is that there is only one recovery from the insurance company and that Sill's fee is to be taken from it. Sarum's construction would require two payments from the insurance company: one to Sarum and one to Sill.
 {¶ 12} Our conclusion is further bolstered by the fact that the contractual language uses the terms "assigns and conveys." This Court has repeatedly applied dictionary definitions of words to interpret their plain meaning. See, e.g., Chuparkoff v.Farmers Ins. of Columbus, 9th Dist. No. 22712, 2006-Ohio-3281, at ¶ 20; State v. Johnson (Dec. 18, 1985), 9th Dist. No. 12157, at *5. "Assign" has been defined as "[t]o convey; to transfer rights or property." Blacks Law Dictionary (8 Ed. 2004) 127. "Convey" has been defined as "[t]o transfer or deliver (something, such as a right or property) to another[.]" Id. at 357.
 {¶ 13} In order to assign a thing, whether tangible or intangible, one must have a legal or equitable interest in it. See Smith v. Barrick (1949), 151 Ohio St. 201, 204. It therefore stands to reason that one cannot assign what does not belong to them. See Id. Yet, were we to accept Appellants' proposed construction of the contract, that legal paradox would be the inevitable result.
 {¶ 14} For instance, suppose hypothetically that Sarum received $100,000 in total proceeds from the insurance company. Suppose also that Sill's percentage fee was 10%. Sill's fee would be $10,000. Under Sarum's construction, Sill would have to recoup its $10,000 fee directly from the insurance company. However, the contract clearly states that Sarum agreed to assign the $10,000 to Sill. If Sill must recover its $10,000 fee directly from the insurance company, then Sarum has no legal or equitable interest in that particular $10,000 and thus, cannot legally assign it. See Smith, supra. Essentially, under Sarum's interpretation, the insurance company, and not Sarum, would be assigning the $10,000 fee to Sill. Such a result would be in direct contravention of the plain language of the contract.
 {¶ 15} Second, Sarum's proffered interpretation is based on circular logic that would create an unending cycle in which Sill's fee could never be adequately calculated. It is clear to this Court that the calculation of Sill's fee was dependent upon the total proceeds, or the total amount recovered from the insurance company. However, under Sarum's interpretation of the contract, the total proceeds could not be determined without first knowing the amount of the fee because the fee needed to be recouped from the insurance company.
 {¶ 16} A hypothetical best illustrates the circular logic of Sarum's argument. As discussed above, suppose that Sarum received $100,000 in total proceeds from the insurance company. Suppose also that Sill's percentage fee was 10%. Sill's fee would be $10,000. Under Sarum's submitted interpretation, the insurance company would actually be paying out $110,000 in total proceeds. Necessarily, then, because the total proceeds increased, the fee would increase to $11,000. However, if this were the case, the total proceeds paid out by the insurance company will have changed yet again, to $121,000 and Sill's 10% fee would need to be recalculated. This cycle could literally continue ad infinitum.
 {¶ 17} As demonstrated above, this Court concludes that accepting Sarum's proffered construction would achieve the result of never adequately calculating the "total proceeds," i.e. the total amount of money the insurance company is required to pay out. This cannot be the result that the parties envisioned.
 {¶ 18} Based on the foregoing, we find that the contractual provision at issue is unambiguous and "we must defer to the express terms of the contract." Haley at ¶ 15. Moreover, because the contract is unambiguous, "the language of the contract controls and intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence." (Quotations omitted). Buckeye Corrugated, Inc. v.DeRycke, 9th Dist. No. 21459, 2003-Ohio-6321, at ¶ 19. The contract expressly states that Sarum agreed to assign to Sill a portion of the total proceeds it received in settlement with the insurance company. Accordingly, Sill did not breach the contract when it deducted its fee, and the trial court did not error in granting judgment on the pleadings with regard to Sarum's breach of contract claim.
Fraud Claim
 {¶ 19} Appellant has argued that Sill induced it into signing both contracts by making fraudulent, prior representations. Appellant has contended that the trial court improperly granted Sill's judgment on the pleadings in reliance on the parol evidence rule to bar admission of Sill's purported statements in support of Sarum's fraud claim. We disagree.
 {¶ 20} The parol evidence rule states that "[i]f contracting parties integrate their negotiations and promises into an unambiguous, final, written agreement, then evidence of prior or contemporaneous negotiations, understandings, promises, representations, or the like pertaining to terms of the final agreement are generally excluded from consideration by the court." Oser v. First Nat. Bank of Ohio (November 15, 1995), 9th Dist. No. 17184, at *2. However, "the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement."Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 28. Nevertheless, "the parol evidence rule may not be avoided by a fraudulent inducement claim which alleges that the inducement to sign thewriting was a promise, the terms of which are directlycontradicted by the signed writing." (Emphasis added). Id. at 29. Put another way, a party, such as Sarum, "may not circumvent the rule by claiming the fraudulent inducement was a prior or contemporaneous oral agreement the terms of which contradict the written agreement." Woods v. Cobbins, 2d Dist. No. 20295,2004-Ohio-5767, at ¶ 20, citing Galmish, 90 Ohio St.3d at 29.
 {¶ 21} Sarum has purported that:
"Following Sill's review of [Sarum's] insurance policies, Sill represented to [Sarum] that if [Sarum] hired Sill in connection with insurance claims regarding the Premises, [Sarum's] insurance company would be responsible for paying Sill's fees, over and above the amount recovered for [Sarum]."
 {¶ 22} The key phrase in the above quoted language is that Sarum's insurance company would be responsible for paying Sill's fees "over and above the amount recovered" for Sarum. We find this language directly contradicts the terms of the express contract, which provided that Sarum would "assign and convey" a percentage of the "total proceeds" as remuneration for Sill's services. Sill's alleged representation indicates that the insurance company would pay Sill's fee "out of its own pocket" and wholly apart from Sarum's settlement proceeds. This necessarily contradicts language of the contract which indicates that Sarum agreed to assign and convey a portion of their proceeds.
 {¶ 23} As discussed above, if the insurance company is required to pay Sill's fee wholly apart from Sarum's settlement, then Sarum would have no legal or equitable right to assign or convey that payment. Accordingly, the purported statement proffered by Sarum contradicts the plain language of the express contract.
 {¶ 24} We also note that "a fraudulent inducement case is not made out simply by alleging that a statement or agreement made prior to the contract is different from that which now appears in the written contract." Galmish, 90 Ohio St.3d at 29. Evidence of a false promise is inadmissible unless it is independent of or consistent with the written instrument. Galmish,90 Ohio St.3d at 30. In this case, Sarum has simply alleged that a prior statement by Sill offered different terms than those embodied in the written contract. Such an attempt to prove a contradictory assertion is exactly what the Parol Evidence Rule was designed to prohibit. Id.
 {¶ 25} Therefore, because Sarum's sole evidence of fraud was barred by the parol evidence rule, Sarum could not prove a set of facts to support its claim of fraud. See McLeland at ¶ 6. Accordingly, the trial court properly granted Sill judgment on the pleadings.
Unauthorized Practice of Law Claim
 {¶ 26} Sarum has argued that the trial court improperly granted Sill judgment on the pleadings on its claim that Sill violated R.C. 4705.07, which prohibits the unauthorized practice of law. Specifically, Sarum has argued that the trial court erred when it held that R.C. 4705.01 did not confer a private right of action when, in fact, Sarum alleged a violation of R.C. 4705.07, which specifically sets forth a private right of action. We are unpersuaded by Sarum's arguments.
 {¶ 27} It is clear from count three of the complaint that Sarum alleged that Sill violated R.C. 4705.01. R.C. 4705.01
states, in relevant part:
"No person shall be permitted to practice as an attorney * * * unless the person has been admitted to the bar by order of the supreme court in compliance with its prescribed and published rules."
We begin by noting that the trial court correctly determined that R.C. 4705.01 does not provide for a private right of action and thereby precludes Sarum from suing under the authority of that statutory provision. However, Sarum has argued in its appellate briefs that its complaint set forth a claim that Sill violated both R.C. 4705.01 and R.C. 4705.07. We disagree.
 {¶ 28} Nowhere in its complaint did Sarum ever allege aviolation of R.C. 4705.07. In count three of the complaint, Sarum asserted the following:
"23. Pursuant to R.C. § 4705.07(C)(1), Sarum requests an interim determination from the Ohio Supreme Court that Sill engaged in the unauthorized practice of law.
"24. Pursuant to R.C. § 4705.07(C)(2), Sarum is a `person' who suffered damages as a direct and proximate result of Sill's unauthorized practice of law." (Emphasis added).
In paragraphs 23 and 24, Sarum has not asserted any statutory violation. Instead, Sarum invoked the remedies available for violations of R.C. 4705.07(A)(3). Pursuant to R.C. 4705.07(A)(3), "[n]o person who is not licensed to practice law * * * shall * * * [c]ommit any act that is prohibited by the supreme court as being the unauthorized practice of law." Pursuant to R.C.4705.07(B)(2), the determination whether a person has committed the unauthorized practice of law in violation of division (A)(3) is solely within the purview of the Ohio Supreme Court.
 {¶ 29} It is important to clarify that one cannot violate
R.C. 4705.07(C)(1)/(C)(2). R.C. 4705.07(C)(2) allows a person who is damaged by another in violation of R.C. 4705.07(A)(3) to commence a civil action to recover actual damages from the violator, upon a finding by the supreme court that the violator actually committed an act that is prohibited by the supreme court as being the unauthorized practice of law. R.C. 4705.07(C)(1) allows a person who is authorized to bring a claim pursuant to division (A)(3) to make a motion to the supreme court to seek interim relief prior to the final resolution of their claim. Thus, subsections (C)(1) and (C)(2) do not set forth substantive rules or prescribe certain types of conduct. Instead, the subsections simply provide the framework for a private right of action for violations of R.C. 4705.07(A)(3).
 {¶ 30} It is clear to this Court that Sarum's complaint did not allege a violation of R.C. 4705.07(A)(3). The complaint solely alleged a violation of R.C. 4705.01 in paragraph 22. Then, in paragraph 23, Sarum invoked the Supreme Court's determinative jurisdiction pursuant to R.C. 4705.07.07(C)(1) and in paragraph 24 invoked the private right of action embodied in R.C.4705.07(C)(2). Because the course of relief provided for in R.C.4705.07(C)(1)/(C)(2) is exclusive to violations of subsection (A)(3), and because Sarum did not allege a violation of division (A)(3), we conclude that the trial court did not err when it granted Sill's motion for judgment on pleadings relevant to Sarum's unauthorized practice of law claim.
 {¶ 31} However, even were we to conclude that the right of action allowed by R.C. 4705.07(C)(2) encompassed all unauthorized practice of law claims, and not solely those alleged under R.C.4705.07(A)(3), this Court still finds that judgment on the pleadings in favor of Sill was proper.
 {¶ 32} R.C. 4705.07(C)(2) states, in pertinent part, that "[a]ny person who is damaged by another person who commits [the unauthorized practice of law] may commence a civil action to recover actual damages * * * upon a finding by the supremecourt that the other person has committed an act that is prohibited by the supreme court as being the unauthorized practice of law[.]" (Emphasis added). Clearly, the statute requires a finding by the Supreme Court that the unauthorized practice of law occurred, prior to commencement of a civil action based on that finding. Sarum has alleged that Sill committed the unauthorized practice of law in its complaint, before it had obtained a determination from the Supreme Court that Sill's conduct constituted the unauthorized practice of law. Accordingly, Sarum's instigation of a lawsuit for the unauthorized practice of law was premature.
 {¶ 33} Sarum has argued that R.C. 4705.07(C)(1) "provides a mechanism for achieving Supreme Court review during the pendancy [sic] of a civil case." We are unpersuaded by Sarum's argument. R.C. 4705.07(C)(1) states that "any person who is authorized to bring a claim before the supreme court that alleges theunauthorized practice of law * * * may make a motion to the supreme court to seek interim relief prior to the final resolution of the person's claim." (Emphasis added).
 {¶ 34} First, we note that the use of the term "claim" in subsection (C)(1) and "civil action" in subsection (C)(2) indicates that these sections do not operate together as claimed by Sarum. Instead, it is apparent to this Court that they are distinct and govern two separate stages of the process: the claim/determination stage and the civil action stage. In the claim/determination stage, a party who believes they have been injured by another whose conduct was the unauthorized practice of law under subsection (A)(3) may bring a claim before the Supreme Court, the only entity with the authority to determine whether the alleged conduct actually constituted the unauthorized practice of law. See R.C. 4705.07(B)(2). It is clear to us that the "interim relief" envisioned by subsection (C)(1) pertains to such a claim, and not to a subsection (C)(2) civil action.
 {¶ 35} R.C. 4705.07(C)(1) allows a claimant in the first stage of the process to request interim relief while awaiting the resolution of their claim, i.e., a determination whether the alleged damaging conduct was in fact the unauthorized practice of law. Perhaps the interim relief requested would be in the form of a preliminary junction enjoining the conduct alleged to be the unauthorized practice of law. We note that Gov.Bar R. VII(5)(a) allows the entity prosecuting the unauthorized practice of law claim on behalf of the injured party to file a motion for an interim cease and desist order with the Supreme Court. The logical conclusion is that R.C. 4705.07(C)(1) provides the same capability for a private party bringing its personal claim for a violation of R.C. 4705.07(A)(3).
 {¶ 36} Regardless, it is evident to this Court that subsection (C)(1) does not allow for a interim determination that the alleged conduct constituted the unauthorized practice of lawduring the pendency of a subsection (C)(2) civil action. Rather, subsection (C)(1) allows a party to move for some form of interim relief during the pendency of their determination claim
in the Ohio Supreme Court, which is a predicate to filing a (C)(2) civil action.
 {¶ 37} Because the necessary determination was not made prior to Sarum's instigation of a civil action for the unauthorized practice of law, the claim was premature. Without a determination by the Supreme Court that Sill's conduct constituted the unauthorized practice of law, Sarum cannot prove a set of facts in support of the claim that Sill in fact engaged in the unauthorized practice of law and that Sarum is entitled to the relief requested. See McLeland at ¶ 6. Therefore, judgment on the pleadings was proper.
Unjust Enrichment Claim
 {¶ 38} Finally, Sarum has argued that the trial court erred when it barred Sarum's claim for unjust enrichment based on the existence of an express contract. Specifically, Appellant has argued that if this Court interprets the disputed provision to provide for payment in the manner proffered by Sill, then Sarum's allegations should be sufficient to present a question of fact as to whether there was ever a meeting of the minds concerning formation of the contract. According to Sarum, if there was no meeting of the minds, then no express contract was formed and the trial court erred in barring Sarum's unjust enrichment claim. We disagree.
 {¶ 39} Sarum is correct that "[t]o declare the existence of a contract, the parties to the contract must consent to its terms, there must be a meeting of the minds of both parties, and the contract must be definite and certain." (Quotations omitted).Zelina v. Hillyer, 165 Ohio App.3d 255, 2005-Ohio-5803, at ¶12. However, as discussed above, we have determined that the disputed contractual language was clear and unambiguous.
 {¶ 40} This Court has held that when the language of a contract is clear and unambiguous, neither party may advance extrinsic evidence to show a meeting of the minds or a lack thereof. Hite v. Leonard Ins. Services Agency, Inc. (Aug. 23, 2000), 9th Dist. No. 19838, at *4, citing Yaroma v. Griffiths
(1995), 104 Ohio App.3d 545, 555. In Hite, the appellant's argument was nearly identical to the one put forth by Sarum in the present case: that if this Court rejects its proffered construction of the written instrument, it should conclude, alternatively, that the contract is void because the parties never had a meeting of the minds. Id. at *4.
 {¶ 41} Based on the foregoing, this Court concludes that Sarum could not prove a set of facts in support of their unjust enrichment claim. McLeland at ¶ 6. Accordingly, judgment on the pleadings was proper.
 {¶ 42} Sarum's four assignments of error lack merit.
 III {¶ 43} Sarum's four assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. Barid, J. concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)